OPINION OF THE COURT
FUENTES, Circuit Judge.
In this securities appeal, we review the District Court’s decision to dismiss the complaint of Key Equity Investors, Inc. (“Key Equity”) for failure to satisfy the pleading requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 et seq. (“PSLRA”). Appellant, Key Equity, alleged that defendants issued materially false and misleading statements about the financial health of a company called Sel-Leb Marketing, Inc. (“Sel-Leb”). For the reasons that follow, we will affirm.
I. Factual and Procedural
Background
A. Factual Background[1]
Sel-Leb is a New York corporation that distributes and markets consumer mer *782 chandise to retailers. At all relevant times, Harold Markowitz, Paul Sharp, Jack Koegel, and George Fischer were company directors, and J.H. Cohn, LLP was a company auditor. In the period between April 5, 2002 and February 25, 2004 (the putative class period), during which Key Equity purchased company stock, Sel-Leb made numerous statements relevant to this appeal.
Two of the statements concerned the past financial performance of the company. First, on April 5, 2002, Sel-Leb filed a form with the Securities and Exchange Commission (“SEC”) reporting a net income of $443,669 for fiscal year 2001. In the disclosure, J.H. Cohn stated that it audited the company’s financial statements and that they conformed with generally accepted accounting principles (“GAAP”). Second, Sel-Leb issued a press release on August 15, 2002 announcing $418,370 in pre-tax earnings for the first six months of 2002.
In contrast to these statements of prior earnings, many of Sel-Leb’s other statements expressed its “glowingly optimistic expectations for fiscal year 2002.” (A50) For instance, in April 2002, the company said it was “slated to begin to generate strong revenue and earnings growth in 2002.” (A51 (internal quotation marks omitted)) In May, the company “antieipate[d] ... reporting] record revenues for its fiscal year end[ing] December 31, 2002.” (A51) In August and September, it reiterated its optimism about 2002. And in November, although recognizing the financial difficulties of “several of our major customers,” Sel-Leb predicted “a significant increase in the sales and earnings” for the fourth quarter of 2002.(A52) Notably, in November the company also stated that it had renegotiated and renewed the terms of a $3.8 million “credit facility” with Merrill Lynch Business Financial Services, Inc. (“Merrill Lynch”). (A53)
In late 2002, Sel-Leb’s expectations about its financial health “began to dim.” (A53) On December 24, 2002, it issued a press release indicating that “sales for the fourth quarter of 2002 will be substantially lower than the revised projection previously issued by the Company.” (A53) The company cited “generally weak economic conditions,” and “production problems” with a third-party manufacturer that had “caused the Company to miss shipping orders during the fourth quarter.” (A53) Moreover, throughout early 2003, the company was unable to make required financial disclosures “due to unforeseen difficulties in obtaining information essential to these estimates.” (A54) Specifically, Sel-Leb had been unable to obtain information “from an independent third party, which is an integral and important part of the Company’s operations.” (A54) As a result, Sel-Leb announced that it would be “delisted from the Nasdaq SmallCap Market with the opening of business on Friday, May 23, 2003.” (A54)
Sel-Leb later disclosed, on July 24, 2003, that it was “not in compliance with certain net worth and cash flow covenants of its Merrill Lynch credit facility,” and on October 15, 2003, revealed that the credit facility had been terminated. (A54) On February 24, 2004, the company indicated that its operations had been significantly curtailed due to decreased sales and lack of funding. Finally, it stated that it had incurred a pre-tax loss of $3.8 million for fiscal year 2002, and also had to revise *783 downward by $1.8 million its pre-tax income for fiscal year 2001.
According to the complaint, although Sel-Leb’s stock had traded as high as $4.00 per share, its disclosures about financial health had rendered the company’s shares worthless.[2]
B. District Court Opinion
On April 9, 2004, Key Equity filed a class action complaint in the United States District Court for the District of New Jersey. Based on the foregoing facts, Key Equity alleged that Sel-Leb, and its directors and accountant, (collectively, “defendants”) had made materially false and misleading statements in violation of section 10(b) of the Securities Exchange Act of 1934.[3] In particular, Key Equity alleged that Sel-Leb had “failed to disclose” that: (1) pre-tax earnings for fiscal year 2001 were overstated by approximately $1.8 million; (2) the company incurred a pre-tax loss of approximately $3.8 million for fiscal year 2002; (3) the company was in default on the terms of its credit facility with Merrill Lynch; and (4) the company’s financial statements were not prepared in accordance with GAAP.
According to the complaint, defendants concealed information about the “true state of the Company’s deteriorating affairs” in order to “maintain the credit facility with Merrill Lynch.” (A57) In Key Equity’s view, “[h]ad Merrill Lynch discovered the adverse information about the Company earlier, it would have called for termination of the credit facility immediately.” (A57)
On defendants’ motion, the District Court dismissed Key Equity’s complaint for failure to state a claim on which relief could be granted, under Federal Rule of Civil Procedure 12(b)(6), and failure to plead facts with particularity, under Rule 9(b) and the PSLRA. The Court reached the following conclusions. Regarding the allegation that the company’s financial statements did not conform to GAAP, Key Equity had not “alleged with any detail what principles ... were violated by Defendants.” (A16) Regarding the allegation that the company renegotiated its credit line because of financial trouble, Key Equity had relied merely on “information and belief,” and thus did not plead with particularity. (A17) Regarding the allegations that the company had misstated its 2001 and 2002 earnings, Key Equity failed to plead with particularity facts giving rise to a “strong inference” of scienter. (A17-20) Finally, the Court concluded that all of the statements concerning the company’s future financial health were “forward looking” and, therefore, did not give rise to liability. (A20-21)
On December 29, 2005, Key Equity filed a Notice of Appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and exercise plenary review over the District Court’s order granting the defendants’ motion to dismiss. Cal. Pub. Employees’ Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir.2004).
*784 II. Legal Background
“Section 10(b) of the Securities Exchange Act of 1934 forbids the ‘use or employ, in connection with the purchase or sale of any security ..., [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe....’” Tel-labs, Inc. v. Makor Issues & Rights, Ltd., - U.S. -, 127 S.Ct. 2499, 2507, 168 L.Ed.2d 179 (2007) (quoting 15 U.S.C. § 78j(b)). “Pursuant to this statutory authority, the [SEC has] promulgated Rule 10b-5, which creates a private cause of action for investors harmed by materially false or misleading statements.” In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 275 (3d Cir.2006).[4]
To state a claim for a violation of section 10(b), a plaintiff must plead the following elements: “(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as ‘transaction causation;’ (5) economic loss; and (6) ‘loss causation,’ i.e., a causal connection between the material misrepresentation and the loss.” Id. (quoting Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)). In assessing the sufficiency of § 10(b) pleadings, we “accept all factual allegations in the complaint as true,” and “consider the complaint in its entirety, as well as ... sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss.” Tellabs, 127 S.Ct. at 2509.
More importantly, in assessing the sufficiency of a § 10(b) claim, we also observe the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA.[5] Under these requirements, a plaintiff must “specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, [a plaintiff must] state with particularity all facts on which that belief is formed.” In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 147 (3d Cir.2004) (quoting 15 U.S.C. § 78u-4(b)(l)(B)). In other words, the complaint should set out the “who, what, when, where and how” of the events at issue. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990) (quoted in In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999)).
Regarding allegations of scienter, a plaintiff must “state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.” In re Alpharma, 372 F.3d at 148 (quoting 15 U.S.C. § 78u-4(b)(2) (emphasis added)). To do so, the complaint may allege (1) “facts to show that defendants had both motive and opportunity to commit fraud,” or (2) “facts that constitute strong circumstantial evidence *785 of conscious misbehavior or recklessness.” Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.1997)). As the Supreme Court has made clear, a complaint gives rise to a “strong inference” of scienter “only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.” Tel-labs, 127 S.Ct. at 2510.
“Stated in another way, unless plaintiffs in securities fraud actions allege facts supporting their contentions of fraud with the requisite particularity mandated by Rule 9(b) and the [PSLRA], they may not benefit from inferences flowing from vague or unspecific allegations—inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis.” In re Rockefeller Center Properties, Inc. Sec. Litig., 311 F.3d 198, 224 (3d Cir.2002). If a complaint fails to meet the stringent pleadings requirements for sustaining a § 10(b) claim, the “appropriate sanction ... is dismissal.” In re Alpharma, 372 F.3d at 148; In re Rockefeller, 311 F.3d at 224 (citing 15 U.S.C. § 78u-4(b)(3)(A)).
III. Discussion
On appeal, Key Equity offers four reasons for us to vacate the order of the District Court and reinstate its complaint. First, Key Equity argues that it did not have to plead with particularity “which provisions of GAAP had been violated in order to satisfy the pleading requirements of the PSLRA and Rule 9(b).” Br. at 9. Second, it argues that it “pleaded with particularity that defendants were in default of the $3.8 million credit facility with Merrill Lynch.” Br. at 11. Third, it contends that its complaint sufficiently alleged “motive and opportunity” to satisfy the pleading requirements for scienter. Br. at 13. Finally, it contends that “defendants’ press releases and financial statements” were not “forward looking” and were “thus not entitled to the PSLRA’s safe harbor protection.” Br. at 15.
We reject these contentions and conclude that Key Equity’s complaint fails to satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA.[6] We agree with the decision of the District Court primarily for two reasons.[7] First, almost all the statements identified by Key Equity were projections about the company’s financial growth, or expressions of general optimism about its financial health. Such positive portrayals of the company, however, are not actionable under § 10(b). As we stated in In re Advanta, “vague and general statements of optimism ‘constitute no more than ‘puffery’ and are understood by reasonable investors as such.’ ” 180 F.3d at 538 (quoting In re Burlington Coat, 114 F.3d at 1428 n. 14). Accordingly, the company’s optimistic statements that it was, for example, “slated to begin to generate strong revenue and earnings growth in 2002,” do not give rise to liability *786 under § 10(b).[8]
Second, although the District Court concluded that the complaint adequately identified Sel-Leb’s earnings statements for 2001 and the first half of 2002 as materially misleading,[9] it concluded that Key Equity had failed to accompany these statements with sufficient allegations of scienter. In order to establish scienter, Key Equity relies on the defendants’ “motive and opportunity” to commit fraud. Presumably, the inference we are to draw is that defendants had a motive to fraudulently misstate earnings because Sel-Leb needed the Merrill Lynch line of credit to operate. Because the company could not meet the requirements for sustaining this line of credit, defendants decided to overstate Sel-Leb’s 2001 and 2002 earnings. Moreover, by stating that it was only “renewing” the credit line, the defendants attempted to disguise the company’s deteriorating financial condition from investors.
We conclude that these allegations have been pleaded with insufficient particularity to meet the heightened pleading requirements of Rule 9(b) and the PSLRA. Specifically, the facts allegedly supporting a strong inference of scienter have not been adequately pled.[10] As the Supreme Court recently stated, “omissions and ambiguities count against inferring scienter, for plaintiffs must ‘state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.’ ” Tellabs, 127 S.Ct. at 2511 (quoting 15 U.S.C. § 78u-4(b)(2)).
In this case, although Key Equity alleges that Sel-Leb falsified its earnings to maintain its credit line, its complaint is bereft of any facts or details supporting this conclusion. We are therefore left to speculate about what particular information was hidden, what financial figures were manipulated, and when any of the defendants knew of or implemented such fraudulent devices. Cf. In re Burlington Coat, 114 F.3d at 1417-18 (“[W]here plaintiffs allege that defendants distorted certain data disclosed to the public by using unreasonable accounting practices, we have required plaintiffs to state what the unreasonable practices were and how they distorted the disclosed data.”). Inferring scienter in these circumstances would impermissibly provide Key Equity the “benefit [of] inferences flowing from vague or unspecific allegations.” In re Rockefeller, 311 F.3d at 224. In other words, because of the complaint’s omissions, it fails to set out the “who, what, when, where and how” of the events at issue. DiLeo, 901 F.2d at *787 627.[11]
Furthermore, we conclude that the complaint fails to adequately plead facts “that constitute strong circumstantial evidence of conscious misbehavior or recklessness.” In re Alpharma, 372 F.3d at 148. To do so, Key Equity would have to allege “an extreme departure from the standards of ordinary care [that] presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.” In re Advanta, 180 F.3d at 535 (quoting McLean v. Alexander, 599 F.2d 1190, 1197 (3d Cir.1979)). Although Key Equity does not appear to pursue a recklessness theory on appeal, its complaint nonetheless fails to satisfy the requirements for doing so. The mere fact of a misstatement is not evidence of recklessness, and Key Equity provides no detail to support a stronger conclusion than: there must have been fraud. We have previously rejected such eonclusory pleading as precisely what the PSLRA was intended to weed out. GSC Partners CDO Fund v. Washington, 368 F.3d 228, 239 (3d Cir.2004) (“Of course, it is not enough for plaintiffs to merely allege that defendants ‘knew’ their statements were fraudulent or that defendants ‘must have known’ their statements were false.”); In re Advanta, 180 F.3d at 539 (rejecting as inadequate allegation that defendants “must have been aware of impending losses”).[12]
IV. Conclusion
For the foregoing reasons, we conclude that Key Equity’s complaint failed to meet the heightened pleading requirements applicable to a securities fraud claim under § 10(b). We therefore affirm.

. On review of a motion to dismiss, we "accept all well-pled allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.” Brown v. *782 Card Service Center, 464 F.3d 450, 452 (3d Cir.2006). Our review is limited to the contents of the complaint and any attached exhibits. Yarris v. County of Delaware, 465 F.3d 129, 134 (3d Cir.2006).

. We may take judicial notice under Federal Rule of Evidence 201 of facts not found by the district court, even when reviewing its ruling on a motion to dismiss.

. In a separate count, Key Equity alleged a violation of section 20(a) of the Exchange Act on the part of Sel-Leb’s directors. Section 20(a) “imposes joint and several liability on any person who 'controls a person liable under any provision of the [Exchange Act].’ ” In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 153 (3d Cir.2004) (quoting Shapiro v. UJB Financial Corp., 964 F.2d 272, 279 (3d Cir.1992)). As we affirm dismissal of the § 10(b) claim, we likewise affirm the dismissal of this claim. Id.

. The rule makes it unlawful "for any person '[t]o make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made[,] in light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security.’ ” Id. (quoting 17 C.F.R. § 240.10b-5(b)).

. The purpose of Rule 9(b) is to "give defendants notice of the claims against them, provide an increased measure of protection for their reputations, and reduce[ ] the number of frivolous suits brought solely to extract settlements.” In re Suprema Specialties, 438 F.3d at 270 (internal quotation marks omitted). The purpose of the PSLRA is "to restrict abuses in securities class-action litigation.” In re Advanta Corp. Sec. Litig., 180 F.3d 525, 531 (3d Cir.1999). To the extent that Rule 9(b) conflicts with the PSLRA, the statute supersedes it. Id. at 531 n. 5.

. For the purposes of brevity, we do not distinguish between defendants in our discussion of the issues. Notably, Key Equity does not do so on appeal. Its failure to specify which facts support a claim against which defendants—i.e., which defendants said and knew what at what time—supports our conclusion that the complaint is not pleaded with sufficient particularity.

. J.H. Cohn also points out that Key Equity failed to adequately plead “loss causation,” i.e., that "the drop in the value of a security is related to the alleged misrepresentation.” Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 223 (3d Cir.2006). Although it appears that no facts establish a causal connection between the misstatements and the decline in the value of the stock, we, like the District Court, need not reach this issue.

. We observe that, arguably, the complaint fails to adequately plead that the earnings statement for the first six months of 2002 was misleading. A $3.8 million loss for the year as a whole is not necessarily inconsistent with gains in the first half of that year. In fact, the press releases indicate that in the latter portion of 2002 a large number of orders could not be filled, leading to financial difficulties. (A43)

. We also note that the complaint sets out nothing more than an ordinary business motive, which is typically insufficient to support a strong inference of fraud. See GSC Partners CDO Fund v. Washington, 368 F.3d 228, 237 (3d Cir.2004) ("Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from this fraud.”) (internal quotation marks omitted).

. To the extent these statements could be considered materially misleading to a reasonable investor, they were "identified as ... forward-looking” and "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.” 15 U.S.C. § 78u-5 (c)( 1 )(A) (i).

. Our dissenting colleague relies on the tightening of Merrill Lynch’s credit line as a motive to commit fraud. The complaint states only that, on information and belief, Sel-Leb had to renegotiate its credit line because it could not repay certain obligations to Merrill Lynch. (A53) With this allegation alone, an inference that defendants renegotiated Sel-Leb’s credit line in the ordinary course of business (when it was up for renewal) is more likely than an inference of scienter. See Tellabs, 127 S.Ct. at 2513.

. Our dissenting colleague would infer scienter from what he believes to be a 400% overstatement of Sel-Leb’s 2001 earnings. We disagree with his calculations. As the record reveals, the original 2001 net earnings of $443,669 resulted from gross income of $21,451,140 and expenses (including taxes) of $21,007,471. The revised figure for that year reflected a reduction of about $1.8 million in pre-tax earnings. Assuming this $1.8 million is a reduction in Sel-Leb’s gross income of over $21 million, the misstatement reflects an error of less than 10%. Cf. PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 686 (6th Cir.2004) ("Accepting Plaintiffs' allegations as true, Intrenet represented itself as a barely profitable company, when in fact it was a barely unprofitable company. It simply cannot be said that Intrenet’s accounting improprieties, by virtue of their type and size, should have been obvious.”). In any event, the complaint provides insufficient details from which to determine what errors the misstatement resulted from, or whether any "red flags” had warned any of the defendants about them.