*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0318p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GLYNN LEY; PUBLIC EMPLOYEE'S RETIREMENT
SYSTEM OF MISSISSIPPI,

                *Plaintiffs-Appellants,*

     *v.*

VISTEON CORPORATION; PETER PESTILLO; MICHAEL
JOHNSTON; DANIEL R. COULSON; JAMES PALMER;
PRICEWATERHOUSECOOPER, L.L.P,

                *Defendants-Appellees.*

No. 06-2237

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-70737—Robert H. Cleland, District Judge.

Argued: July 29, 2008

Decided and Filed: August 26, 2008

Before: ROGERS and McKEAGUE, Circuit Judges; ADAMS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Kevin D. McHargue, BARON & BUDD, Dallas, Texas, for Appellants. John F. Hartmann, KIRKLAND & ELLIS, LLP, Chicago, Illinois, Peter W. Devereaux, LATHAM & WATKINS, LLP, Los Angeles, California, for Appellees. **ON BRIEF:** Kevin D. McHargue, Randall K. Pulliam, Lisa W. Shirley, BARON & BUDD, Dallas, Texas, Marc L. Newman, THE MILLER LAW FIRM, Rochester, Michigan, for Appellants. John F. Hartmann, Michael A. Duffy, KIRKLAND & ELLIS, Chicago, Illinois, Jenice C. Mitchell, John R. Trentacosta, FOLEY & LARDNER, LLP, Detroit, Michigan, Miles N. Ruthberg, Peter W. Devereaux, LATHAM & WATKINS, LLP, Los Angeles, California, Janet M. Link, Michael J. Faris, LATHAM & WATKINS, Chicago, Illinois, for Appellees.

---

[*] The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

1

_____

**OPINION**

_____

McKEAGUE, Circuit Judge.  Plaintiffs Glynn Ley and Public Employees' Retirement System of Mississippi (collectively, "Plaintiffs") appeal a district court's grant of Defendants' Visteon Corporation, Peter Pestillo, Michael Johnston, Daniel R. Coulson, James Palmer, and Pricewaterhousecooper, L.L.P., ("PwC") (collectively, "Defendants") motions to dismiss Plaintiffs' class action securities violation claims.  Upon review of the record and the applicable law, we AFFIRM the judgment of the district court.

**BACKGROUND**

Plaintiffs, individually and on behalf of all others similarly situated, brought a complaint against Defendants for violations of the federal securities laws.[1]  Each member of the Plaintiff Class purchased or otherwise acquired Visteon securities between June 28, 2000 and January 31, 2005 (the "Class Period"). Defendant Visteon is a global supplier of automotive systems, modules, and components to vehicle manufacturers and the automotive aftermarket.  Defendants Pestillo, Johnston, Coulson, and Palmer (the "Individual Defendants") acted in the capacity of senior executive officers and/or directors of Visteon and Defendant PwC is a firm of certified public accountants engaged by Visteon during the Class Period.

Before its incorporation, Visteon operated as the unnamed parts division of Ford.  Visteon was incorporated as a wholly owned subsidiary of Ford on January 5, 2000.  On June 28 of that same year, Visteon was spun off (the "Spin-Off") as a separate publicly traded company.  In connection with the Spin-Off, Ford and Visteon jointly filed a Prospectus and Registration Statement with the Securities and Exchange Commission (the "SEC").

On January 31, 2005, Visteon reported its preliminary fourth quarter and full year results for 2004, indicating a significant loss for 2004.  In particular, Visteon reported errors in the company's accounting for certain benefits and income taxes.  Plaintiffs allege that Visteon's "revelations shocked the market" and "[s]hares of Visteon fell $0.51 or 6.43 percent, on January 31, 2005, to close at $7.42 per share." (Am. Compl. ¶ 69.)  On March 16, 2005, Visteon filed its amended Form 10-K for the period ending December 31, 2003.  In that filing, Visteon indicated that its previously issued financial statements contained "$108 million in accounting errors which understated net losses by in excess of $60 million." (*Id.* at ¶ 70.)  On May 10, 2005, Visteon announced it would delay filing its Form 10-Q for the quarterly period ending March 31, 2005 and reported errors in its "accruals for costs principally associated with freight and material surcharges."  (*Id.* at ¶ 77.)  Visteon's stock price reached a low of $3.14 on May 11, 2005. (*Id.* at ¶ 5.)  Plaintiffs allege this "represented a decline of 60% from the end of the Class Period and a staggering drop of 86% from the Class Period high of $21.72 on August 1, 2001." (*Id.*)  "During this time, Visteon shareholders lost $2.33 billion in market capitalization."  (*Id.*)

In the Amended Complaint, Plaintiffs assert three claims.  In Count I of the Amended Complaint against Defendants Visteon, Pestillo, and Coulson, Plaintiffs assert a § 11 claim pursuant to the Securities Act of 1933 (the "1933 or Securities Act"), 15 U.S.C. § 77k, on behalf of all persons who acquired Visteon's common stock in or traceable to the Spin-Off Prospectus, alleging

---

[1] Former named Plaintiff Glenn Ley filed the original complaint on February 25, 2005, joining Visteon and certain of its officers as defendants.  Current named Plaintiff Public Employees' Retirement System of Mississippi filed the amended complaint on September 19, 2005 (the "Amended Complaint"), adding PwC as a defendant in one of the claims.

that Visteon's Spin-Off Prospectus was "inaccurate and misleading, contained untrue statements of material facts, and omitted to state material facts necessary to make the statements made not misleading." (*Id.* at ¶¶ 138-39.) In Count II of the Amended Complaint against all Defendants, Plantiffs assert a § 10(b) claim pursuant to Securities Exchange Act of 1934 (the "1934 or Exchange Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, alleging that Defendants "carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class Members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Visteon securities at artificially inflated prices." (*Id.* at ¶¶ 146-47.) In Count III of the Amended Complaint against the Individual Defendants, Plaintiffs assert a claim pursuant to § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), seeking to hold the Individual Defendants liable as "controlling persons." (*Id.* at ¶ 159.)

Visteon and the Individual Defendants filed a motion to dismiss Plaintiffs' claims. Defendant PwC filed a separate motion to dismiss. After a hearing on May 16, 2006, the district court granted both motions on August 31, 2006. *See Ley v. Visteon Corp.*, No. 05-CV-70737-DT, 2006 WL 2559795, at *11 (E.D. Mich. Aug. 31, 2006). Plaintiffs timely appeal followed.

## STANDARD OF REVIEW

We review *de novo* a district court's dismissal of a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004). We "must accept as true 'well-pleaded facts' set forth in the complaint." *Id.* We must construe the complaint in a light most favorable to the plaintiffs and determine whether the plaintiffs undoubtedly can prove no set of facts in support of their claims that would entitle them to relief. *See id.* "In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.,* 413 F.3d 553, 560 (6th Cir. 2005) (citation omitted). Moreover, we may affirm on any grounds supported by the record, even though they may be different from the grounds relied on by the district court. *See Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999).

## ANALYSIS

### Count I - § 11 claim

The district court dismissed Count I because Plaintiffs stated in their briefing that they did not oppose Defendants' motion to dismiss the claim based on a statute of limitations defense. Likewise, Plaintiffs have not argued the § 11 claim in their briefs before this court. Accordingly, we will not disturb the district court's dismissal of Plaintiffs' § 11 claim.

### Count II - § 10(b) claim

In Count II of the Amended Complaint, Plaintiffs assert a claim under § 10(b) of the Exchange Act and Rule 10b-5 against all Defendants. On appeal, Plaintiffs challenge the propriety of the district court granting Defendants' motions to dismiss that claim.

Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Under Rule 10b-5, it is illegal for one "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . ." 17 C.F.R. § 240.10b-5.

We have explained that:

Generally, federal securities law prohibits "fraudulent, material misstatements or omissions in connection with the sale or purchase of a security." *Morse v. McWhorter*, 290 F.3d 795, 798 (6th Cir. 2002). Specifically, in order to state a claim under Section 10(b) of the Securities Exchange Act of 1934, or under SEC Rule 10b-5, a plaintiff must allege: (1) a misrepresentation or omission; (2) of a material fact that the defendant had a duty to disclose; (3) made with scienter; (4) justifiably relied on by plaintiffs; and (5) proximately causing them injury. *Helwig v. Vencor, Inc.*, 251 F.3d 540, 554 (6th Cir. 2001) (en banc) (citing *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1409 (6th Cir. 1991)); *see also* [*In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997)]. A statement is said to be "actionable" when it satisfies the first two of these requirements, i.e., it is a misrepresentation or omission of a material fact that the defendant had a duty to disclose. *See, e.g., Nathenson v. Zonagen Inc.*, 267 F.3d 400, 415 (5th Cir. 2001); *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 179 (2d Cir. 2001).

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 668 (6th Cir. 2005).

We have also articulated that:

Adding to the Federal Rule of Civil Procedure 9(b) requirement that fraud allegations be stated with particularity, the [Private Securities Litigation Reform Act of 1995 ("PSLRA"), 109 Stat. 737] requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

*PR Diamonds, Inc.*, 364 F.3d at 681. The Supreme Court has stated that "[e]xacting pleading requirements are among the control measures Congress included in the PSLRA. The Act requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2504 (2007) (citation omitted).

For purposes of clarity, we will separately address Plaintiffs' allegations below, discussing first Plaintiffs' allegations against Visteon and the Individual Defendants, and then against PwC.

## A. Visteon and the Individual Defendants

### *1. Plaintiffs fail to allege a misrepresentation or omission of material fact regarding the Spin-Off claims*

To state a claim under §10(b) or Rule 10b-5, Plaintiffs must allege that Defendants made a misrepresentation or omission of material fact that Defendant had a duty to disclose. *See City of Monroe Employees Ret. Sys.*, 399 F.3d at 668. Here, Plaintiffs allege that Visteon failed to disclose or partially disclosed various information at the time of the Spin-Off to disguise that Visteon was destined to fail.

Plaintiffs allege that Defendants failed to disclose that "Ford so dominated the day to day business affairs of Visteon via the contracts between the two and beholden Visteon management, such that Visteon was essentially no more than a repository for operations of Ford that had built in losses." (Am. Compl. ¶ 43.) Essentially, Plaintiffs argue that Defendants failed to adequately disclose that Visteon may have difficulty shedding unprofitable business lines. To the contrary, the

Spin-off Prospectus and subsequent disclosures were rife with such information. *See, e.g.,* J.A. 76, 370, 384, 397, 432.

Plaintiffs also allege that Defendants failed to disclose that "Visteon's cost structure resulting from the requirement to compensate Ford's UAW employees created a cost disadvantage as compared to the Company's competitors of at least $700 million to $1 billion." (Am. Compl. ¶ 43.) Yet, Visteon provided extensive information about its labor costs and even suggested such costs could impede its ability to compete. *See, e.g.,* J.A. 249-252, 289-90, 298-99.

Plaintiffs further allege that "Visteon's stated strategy could not be achieved as the Company was incapable of financial success as an independent entity due to the burdensome price restrictions exacted by Ford. . . ." (Am. Compl. ¶ 43.) However, Visteon disclosed it owed Ford certain price reductions. *See, e.g.,* J.A. 249-51, 262, 266, 296-97, 334-35.

Plaintiffs allege that "Visteon's lack of its own information technology department made it impossible for the Company to operate successfully as an independent Company." (Am. Compl. ¶ 43.) Yet, Visteon explicitly told investors it had to pay Ford for these services. *See, e.g.,* J.A. 297, 331, 335, 337, 382, 393, 407.

Plaintiffs allege Visteon failed to disclose that "Visteon management was so beholden to Ford that they did not act in the best interests of Visteon shareholders in negotiating the terms of the spin-off, nor were they prospectively capable of operating Visteon's business without subjugating the Company's interests to those of Ford's." (Am. Compl. ¶ 43.) To the contrary, a specific provision of the Prospectus disclosed that Visteon management "may have conflicts of interest when faced with decisions that could have different implications for our company and Ford." *See* J.A. 250; *see also* J.A. 302-307.

Plaintiffs also suggest that Visteon failed to disclose its dependence on Ford. However, Visteon's disclosures were replete with information about its dependence on Ford. *See, e.g.,* J.A. 248, 250, 263, 290, 374, 380, 392, 406.

Despite all of these disclosures by Visteon, Plaintiffs insist that Visteon had a duty to disclose even more. Specifically, Plaintiffs argue that they "never alleged that Visteon did not disclose its labor costs were high; rather, Plaintiffs' complaint is that Visteon did not reveal the truth regarding how high those costs were relative to Visteon's competition." Appellants' Br. at 29. Plaintiffs allege that an anonymous former Visteon employee said that there was "absolutely no way Visteon could be competitive." (Am. Compl. ¶ 38.) Yet, Defendants went so far as to disclose that "Visteon may incur wage differentials of 20-40% higher than the average competitor whose employees are not covered by a master UAW contract." J.A. 249. That Plaintiffs now argue that the differential percentage provided by Visteon was not high enough is part of the reason that there is simply no duty to disclose what Plaintiffs suggest and we will not advocate a rule that requires companies to draw such comparisons. In this respect, we find persuasive the Third Circuit's reasoning that:

> The federal securities laws do not ordain that the issuer of a security compare itself in myriad ways to its competitors, whether favorably or unfavorably, for at least three reasons. First, such a requirement would impose an onerous if not insurmountable obstacle on issuers of securities to ensure they obtain accurate information on all aspects of their competitors which a reasonable investor might find material. Second, were we to announce such a requirement, the likely result would be to inundate the investor with what the Supreme Court disparaged as "an avalanche of trivial information." [*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448 (1976)]. Third-and of greatest consequence-it is precisely and uniquely the

function of the prudent *investor, not* the issuer of securities, to make such comparisons among investments. *See* [*In re Donald J. Trump Casino Sec. Litig*., 793 F.Supp. 543, 559 (D.N.J. 1992)].

*In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig*., 7 F.3d 357, 375 (3d Cir. 1993).

In the same vein, Plaintiffs argue that they "did not allege that Visteon failed to disclose that Ford was its main customer and that it would be dependent on Ford for business, but rather that Visteon held itself out to be an independent entity when in fact it had no ability to operate as a viable independent company." Appellants' Br. at 31. Unfortunately for Plaintiffs, a company is not required to use the negative characterizations that Plaintiffs suggest. *See In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig*., 7 F.3d at 375 (stating companies do not need to use "pejorative nouns or adjectives") (citation omitted); *see also In re Sofamor Danek Group, Inc*., 123 F.3d at 402 ("Whether the premium was so high that the company should have been able to predict that it would prove counterproductive was clearly a matter of opinion-soft information as to which there was no duty of disclosure.").

Here, Defendants provided investors with plenty of information to determine whether Visteon could operate as a viable independent company. That Plaintiffs would like even more disclosure misses the point that a violation of § 10(b) and Rule 10b-5 requires that the company have a duty to disclose information that is material. Defendants had no duty to disclose what Plaintiffs suggest and such information would not be considered material in any event. *Cf. Benzon v. Morgan Stanley Distribs., Inc*., 420 F.3d 598, 609 (6th Cir. 2005) ("Given that all of the information necessary to compare the different class shares was in the prospectuses, the alleged omissions in this case are not material."); *see also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig*., 7 F.3d at 375 ("In other words, an explicit statement in the prospectus that the Taj Mahal demanded an average daily casino win of $1.3 million to meet its debtload would have been superfluous."). In *Benzon*, we explained that:

> "Materiality depends on the significance the reasonable investor would place on the withheld ... information.*" Helwig v. Vencor, Inc*., 251 F.3d 540, 555 (6th Cir. 2001) (en banc). While statements of the type proposed by Plaintiffs *might* have facilitated an investor's task in comparing the share classes, the critical question is whether they would have "significantly altered the 'total mix' of information made available." *Id*. at 563 (quoting [*Basic Inc. v. Levinson,* 485 U.S. 224, 231-32 (1988)]). Given that the disclosures Plaintiffs propose are merely interpretations drawn from the facts presented in the prospectuses, and do not actually provide new information, they would not have "significantly altered the 'total mix'" of the information already presented in the prospectuses.

*Benzon,* 420 F.3d at 609. Plaintiffs fail to allege that Defendants made any actionable material misstatements or omissions and therefore the district court properly dismissed the Plaintiffs' Spin-Off-related claims.[2] In so holding, we have not applied the truth-on-the-market defense, and therefore, we reserve for another day the issue of whether that doctrine may be applied at the motion to dismiss stage of the pleadings.

---

[2] While Plaintiffs object to the district court adopting Defendants' characterization of Plaintiffs' § 10(b) claim as encompassing both Spin-Off and Restatement-related claims, we find such characterizations are simply that, characterizations, and therefore we need not disturb the district court's opinion in this respect. In any event, whether we agree with the characterization would not change our decision in this case.

**2. *Plaintiffs fail to allege a strong inference of scienter regarding the Restatement claims***

Plaintiffs must plead facts giving rise to a strong inference of scienter to avoid dismissal. While pleading claims for fraud always required a high level of particularity, *see* Fed. R. Civ. P. 9(b), the PSLRA requires an even higher standard for pleading scienter in a securities-fraud case:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, *state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.*

15 U.S.C. § 78u-4(b)(2) (emphasis added). Although the PSLRA does not define what constitutes the required state of mind, we have explained that knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness may constitute scienter. *See In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 550 (6th Cir. 1999); *see also Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 (1976).

The "strong inference" requirement means that plaintiffs are entitled only to the most plausible of competing inferences. *Helwig,* 251 F.3d at 555; *see also Tellabs, Inc.*, 127 S.Ct. at 2504-05 ("To qualify as 'strong' within the intendment [of the PSLRA], we hold, an inference of scienter must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.").

In *Helwig*, we listed factors that, while not exhaustive, are probative of scienter in securities fraud cases:

> (1) insider trading at a suspicious time or in an unusual amount;
> (2) divergence between internal reports and external statements on the same subject;
> (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information;
> (4) evidence of bribery by a top company official;
> (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit;
> (6) disregard of the most current factual information before making statements;
> (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication;
> (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and
> (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Id*. at 552.

On appeal, Plaintiffs identify six circumstances in their Amended Complaint that they argue give rise to a strong inference of scienter:

> (1) statements by corporate insiders that Visteon intentionally engaged in accounting improprieties in order to inflate earnings; (2) the statement by Individual Defendant Peter Pestillo, then-CEO of Visteon, that the Company had a "solid year" in 2002 when he knew that in fact the Company was barely liquid; (3) the Sarbanes-Oxley Certifications signed by Individual Defendants Michael Johnston and James Palmer that falsely certified Visteon's financial statements as free from material misstatement and protected by internal controls, particularly in light of the closeness in time between those Certifications in March 2005 and the restated earnings in

August 2005; (4) the nature and magnitude of Visteon's accounting improprieties, amounting to at least $198 million over a four-year period; (5) Visteon's practice of reporting financial information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; and (6) Visteon's motive and opportunity to improve Ford's financial performance by shifting Ford's losses to Visteon and perpetuating the falsehood that Visteon was a financially viable company.

Appellants' Br. at 39.

While we consider Plaintiffs' allegations in total when determining whether Plaintiffs sufficiently plead scienter, *see PR Diamonds, Inc*., 364 F.3d at 683, we address each argument individually in this opinion for purposes of clarity.

### i. Insider statements

Plaintiffs first argue that a strong inference of scienter is apparent because Visteon intentionally violated Generally Accepted Accounting Principles ("GAAP") to artificially inflate revenues. The support for Plaintiffs' assertions in this respect are limited to the statements of an anonymous source within Visteon. Plaintiffs explain that, according to a former senior finance director at Visteon, one accounting impropriety "involved the practice of booking customer rebates obtained from suppliers in the year the supplier contract was entered, even though the rebates had not yet actually been received." Appellants' Br. at 40. Plaintiffs allege that "[a]lthough GAAP requires the rebates to be spread over the life of the contract, Visteon's motive for doing so was to 'falsely improve the Company's financial condition by lowering costs through booking future rebates in one period.'" (Am. Compl. ¶ 79.) "Also according to a former senior finance director at Visteon, Visteon's suppliers would routinely pass along increases in the price of materials for the goods sold to Visteon." (Am. Compl. ¶ 80.) "Rather than book these material surcharges in the period in which they occurred as required by GAAP, Visteon would 'defer' these surcharges and not account for them in its financial statements." (*Id.*) Plaintiffs allege Visteon's motive was to not report "the cash that was actually going out the door." (*Id.*)

While we agree that anonymous sources are not altogether irrelevant to the scienter analysis, Plaintiffs' allegations here are too vague and conclusory to be accorded much weight. *See Higginbotham v. Baxter Int'l Inc*., 495 F.3d 753, 757 (7th Cir. 2007) (finding allegations of confidential witnesses must be discounted and "[u]sually that discount will be steep"). Indeed, Plaintiffs fail to allege who at Visteon knew about these alleged accounting improprieties and what, when, where, and how they knew. Without such context, we cannot say the statements raise an inference of scienter.

### ii. Pestillo statement

Plaintiffs allege that Defendant Pestillo's statement in January 2003 that Visteon "had a solid year in 2002" while at the same time the Company was internally saying it was "not doing well," barely had enough money to pay its bills," and was "barely liquid" is evidence of scienter. (Am. Compl. ¶ 33.) We agree with the district court that this statement was "corporate optimism," and not probative of scienter. *See In re Ford Motor Co. Sec. Litig*., 381 F.3d 564, 570 (6th Cir. 2004) ("Such statements are either mere corporate puffery or hyperbole that a reasonable investor would not view as significantly changing the general gist of available information, and thus, are not material, even if they were misleading."). Moreover, the context of the statement involves a press release wherein Visteon had just prior to Pestillo's comment stated 2002 earnings were higher than 2001 earnings and therefore Plaintiffs are wrong to suggest that Pestillo was commenting on liquidity when he was commenting about earnings. *See In re Donald J. Trump Casino Sec. Litig.- Taj Mahal Litig*., 7 F.3d at 371 ("[W]e must consider an alleged misrepresentation within the context

in which the speaker communicated it"); *cf. Helwig*, 251 F.3d at 552 (stating one of the factors for scienter analysis is "divergence between internal reports and external statements *on the same subject*") (emphasis added). For that reason, Plaintiffs reliance on *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1092 (1991) is also misplaced.

### iii. Certifications

Plaintiffs contend that Pestillo's and Palmer's signatures on the Sarbanes-Oxley certifications are evidence of scienter. (Am. Compl. ¶87.) The district court declined "to interpret the signed certifications as evidence of scienter, as doing so would be to hold company executives strictly liable for innocent accounting mistakes." *Ley*, 2006 WL 2559795, at *9. We agree with the Eleventh Circuit that a "Sarbanes-Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements." *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006); *see also Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 554-55 (5th Cir. 2007). Here, Plaintiffs fail to allege facts to suggest that Pestillo or Palmer had reason to know or should have suspected accounting irregularities or other "red flags" at the time they signed the certifications. Indeed, Plaintiffs have not explained the link between these statements and the actual accounting issues at Visteon. Therefore, we agree with the district court that the signatures are not probative of scienter.

### iv. Nature and magnitude of accounting improprieties

Plaintiffs also argue that the nature and magnitude of Visteon's accounting improprieties warrant an inference of recklessness. Appellants' Br. at 48-49. Defendants urge us to reject this argument outright based on our court's proclamation that "[w]e decline to follow the cases that hold that the magnitude of the financial fraud contributes to an inference of scienter on the part of the defendant." *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004). However, in *PR Diamonds, Inc.*, 364 F.3d at 685, this court considered the magnitude and nature of the accounting issues, but held that "the accounting irregularities Plaintiffs allege in this case are significantly less egregious in nature and magnitude and thus do not support a strong inference [of scienter]."

Even if we consider whether the nature and magnitude of the accounting errors support an inference of scienter, we agree with the district court that they do not here. First, we agree with the district court that the accounting errors here were not "so simple, basic, or pervasive in nature" to have been obvious to the Defendants. *PR Diamonds, Inc.*, 364 F.3d at 684. Indeed, the errors involve amendments to retiree health benefit plans, amount and time of certain tax adjustments and changes to deferred taxes, corrections for certain tooling costs and volume related rebates, inventory costing corrections, unrecorded pension expenses related to European operations and postretirement health care expenses in a foreign location, errors related to freight expenses, material surcharges and supplier expenses. (Am. Compl. ¶¶ 68, 70, 78.) Likewise, we agree with the district court that said errors were not "so great in magnitude" to be obvious to Defendants. *PR Diamonds, Inc.*, 364 F.3d at 684. The district court points out that Plaintiffs themselves, in briefing before the district court, only alleged that Defendants overstated its total revenues by 5.68% during the Class Period. *See* J.A. 1083. While we do not necessarily advocate a rigid adherence to percentages, such a low percentage of change to total revenue does not strike us as the type of "'in your face facts' that 'cry out' scienter." *PR Diamonds, Inc.*, 364 F.3d at 686.

We do not dispute that a "Restatement, under Accounting Principles Board Opinion (APB) No. 20, is a 'correction of errors in previously issued financial statements.'" *Frank v. Dana Corp.*, 525 F.Supp. 2d 922, 929 (N.D. Ohio 2007); *see also In re Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F.Supp.2d 873, 894 (N.D. Ohio 2006) ("By definition. . . a restatement says that the prior financial statement was false."). Here, however, Plaintiffs fail to allege any particularized facts to suggest that the statements were knowingly or recklessly false at the time they were made to the

market and therefore Plaintiffs seek to hold Defendants accountable for nothing more than a Restatement of its financials.

### v.  *Reporting practices*

Plaintiffs allege that Visteon's disclosures "were often presented in an intentionally confusing manner" and therefore raise an inference of scienter. Appellants' Br. at 52. "In this regard, Visteon chose to conceal the losses on the Ford contracts that were inherent at the time of the Spin-Off by reporting those losses in multiple documents that could only be fully understood when read together." *Id.* Plaintiffs also allege that "[s]imilarly, the 2004 consolidated financial statements did not simply state the truth, which was that the cash from operations would apparently not be sufficient to cover operating costs and other cash needs" and instead "[t]his fact was disclosed piecemeal in two separate notes to the 2004 consolidated financial statements that had to be read together." *Id.* at 53. Again, what Plaintiffs want is for Defendants to couch the financial health of Visteon in the negative terms of their choosing, but that is not required under the federal securities laws. Plaintiffs do not argue the information they seek was not disclosed, but rather it was disclosed in a misleading way. However, Plaintiffs fail to cite any authority for their argument that disclosure in two separate notes to the financials under these circumstances is problematic and we find none.

### vi.  *Motive and opportunity*

Plaintiffs also argue that Defendants' motive and opportunity to commit fraud supports a strong inference of scienter. Most of Plaintiffs' motive and opportunity allegations do not raise an inference of scienter, let alone a strong one, and do not warrant further discussion here. *See PR Diamonds, Inc.*, 364 F.3d at 690 ("All corporate managers share a desire for their companies to appear successful. That desire does not comprise a motive for fraud."); *In re Comshare Inc. Sec. Litig.*, 183 F.3d at 551 ("[W]e hold that plaintiffs may meet PSLRA pleading requirements by alleging facts that give rise to a strong inference of reckless behavior *but not by alleging facts that illustrate nothing more than a defendant's motive and opportunity to commit fraud*.") (emphasis added).

However, we briefly will address Plaintiffs more specific allegation that Defendants' motive was a March 2004 note offering to raise additional capital and to avoid defaulting on existing notes. (Am. Compl. ¶ 134). In *PR Diamonds, Inc.*, we addressed a similar allegation in which the plaintiffs alleged that defendants "were motivated to engage in fraud in order to forestall Intrenet's default of its bank loan agreement and to preserve the Company's ability to borrow pursuant to its credit facility." 364 F.3d at 690. There, we explained that we "view the motive allegations concerning the bank loan and credit facility as suggestive of scienter, although standing alone they do not establish a strong inference." *Id.*; *see also Key Equity Investors, Inc. v. Sel-Leb Marketing, Inc.,* 246 F. App'x 780, 786 n.10 (3d Cir. 2007) (stating that "the complaint sets out nothing more than an ordinary business motive, which is typically insufficient to support a strong inference of fraud" wherein plaintiffs alleged that a company falsified its earnings to maintain its credit line). Here, Plaintiffs fail to allege any particularized facts or details related to the notes offering that support an inference of scienter. As the Third Circuit explained:

> In this case, although Key Equity alleges that Sel-Leb falsified its earnings to maintain its credit line, its complaint is bereft of any facts or details supporting this conclusion. We are therefore left to speculate about what particular information was hidden, what financial figures were manipulated, and when any of the defendants knew of or implemented such fraudulent devices. *Cf.* [*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417-18 (3d Cir. 1997)] ("[W]here plaintiffs allege that defendants distorted certain data disclosed to the public by using unreasonable

accounting practices, we have required plaintiffs to state what the unreasonable practices were and how they distorted the disclosed data."). Inferring *scienter* in these circumstances would impermissibly provide Key Equity the "benefit [of] inferences flowing from vague or unspecific allegations." [*In re Rockefeller Center Prop., Inc. Sec. Litig.*, 311 F.3d 198, 224 (3d Cir. 2002)]. In other words, because of the complaint's omissions, it fails to set out the "who, what, when, where and how" of the events at issue. [*DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)].

*Key Equity Investors, Inc.,* 246 F. App'x at 786-87. The same is true here.

We find that Plaintiffs' allegations, taken together and viewed collectively, fail to adequately plead a strong inference of scienter on the part of Visteon and the Individual Defendants. Accordingly, the district court properly dismissed the Plaintiffs' Restatement-related claims.

## B. PwC

The district court also concluded that Plaintiffs failed to allege a strong inference of scienter on the part of PwC and therefore dismissed Plaintiffs' § 10(b) claim with respect to PwC. We agree.

We have explained the pleading standard as applied to an outside auditor:

The same PSLRA pleading standards . . . apply to the allegations against Andersen. However, the meaning of recklessness in securities fraud cases is especially stringent when the claim is brought against an outside auditor. *In re SmarTalk Teleservices, Inc. Secs. Litig.*, 124 F.Supp.2d 505, 514 (S.D. Ohio 2000). Recklessness on the part of an independent auditor entails a mental state so culpable that it "approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 121 (2d Cir. 1982); *Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335, 1341 (9th Cir. 1980) (auditor's recklessness "must come closer to being a lesser form of intent (to deceive) than merely a greater degree of ordinary negligence") (internal quotations omitted). Scienter "requires more than a misapplication of accounting principles. The [plaintiff] must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *In re Worlds of Wonder Secs. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994) (quoting *SEC v. Price Waterhouse*, 797 F.Supp. 1217, 1240 (S.D.N.Y. 1992)).

"When the standard of recklessness for an auditor is overlaid with the pleading requirements of the PSLRA, a simple rule emerges: to allege that an independent accountant or auditor acted with scienter, the complaint must allege specific facts showing that the deficiencies in the audit were so severe that they strongly suggest that the auditor must have been aware of the corporation's fraud." *SmarTalk*, 124 F.Supp.2d at 514 (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1570 (9th Cir. 1990) and *In re Software Toolworks, Inc.*, 50 F.3d 615, 628 (9th Cir. 1994)). "[T]o allege that an independent accountant or auditor acted with scienter, the complaint must identify specific, highly suspicious facts and circumstances available to the auditor at the time of the audit and allege that these facts were ignored, either deliberately or recklessly." *SmarTalk*, 124 F.Supp.2d at 515.

*PR Diamonds, Inc.*, 364 F.3d at 693-94.  PwC's liability, if any, is limited to its making misstatements or omissions, not simply giving aid to a person making a material misstatement or omission.  *See Fidel*, 392 F.3d at 235.

On appeal, Plaintiffs argue that the following circumstances give rise to a strong inference that PwC either deliberately or recklessly disregarded the problems with Visteon's accounting practices: "(1) PwC's failure to maintain its professional independence; (2) the nature and magnitude of Visteon's GAAP violations known to PwC; (3) PwC's unqualified audits to Visteon's related party transactions with Ford in violation of [Generally Accepted Auditing Standards ("GAAS")]; and (4) PwC's intimate knowledge of Visteon's internal financial information."  Appellants' Br. at 58.

### 1.  Failure to maintain professional independence

PwC was an auditor for both Visteon and Ford at the time of the Spin-Off and after. Plaintiffs appear to argue that because PwC received more fees from Ford than Visteon, PwC was motivated to favor Ford to the detriment of Visteon.  Appellants' Br. at 58-59.  We have rejected a similar allegation of motive:

> In addition, the class members argue that Ernst & Young's desire to keep Fruit of the Loom as a client creates a strong inference of Ernst & Young's scienter. They allege that Ernst & Young reaped significant fees from its relationship with Fruit of the Loom that it did not want to jeopardize by calling attention to Fruit of the Loom's poor financial condition. However, allegations that the auditor earned and wished to continue earning fees from a client do not raise an inference that the auditor acted with the requisite scienter. At best, they set forth a motive for the auditor to have engaged in fraud. Bare allegations of motive are insufficient to adequately plead scienter. As we observed in *Helwig*, "facts presenting motive and opportunity may be of enough weight to state a claim under the PSLRA, whereas pleading conclusory labels of motive and opportunity will not suffice." 251 F.3d at 551. We further clarified in *Comshare* that a plaintiff cannot meet PSLRA's pleading requirements by "alleging facts that illustrate nothing more than a defendant's motive and opportunity to commit fraud." 183 F.3d at 551. The plaintiffs in this case do nothing more than state facts that establish Ernst & Young had a motive to commit fraud; their complaint alleges that Fruit of the Loom was a lucrative client from which Ernst & Young earned millions of dollars each year. While this information suggests that Ernst & Young benefitted from its relationship with Fruit of the Loom, it would be mere speculation to rely on this evidence to establish that Ernst & Young acted knowingly or recklessly in preparing the audit report. *See id.* at 554 (a pleading under the PSLRA cannot rest on speculation or conclusory allegations).
>
> Further, Ernst & Young would always be motivated to maintain positive relations with a current client, and there is no indication that its motive to retain Fruit of the Loom as a client was any different than its general motive to retain business. Absent any allegations that Ernst & Young's fees from Fruit of the Loom were more significant than its fees from other clients or that Fruit of the Loom represented a significant portion of Ernst & Young's revenue, it is difficult to surmise how Ernst & Young's desire to keep Fruit of the Loom as a client would be any different from its desire to keep any client and thus be indicative of fraud. *Cf. PR Diamonds,* 364 F.3d at 690 (observing that courts "distinguish motives common to corporations and executives generally from motives to commit fraud"); [*Kennilworth Partners L.P. v. Cendant Corp.*, 59 F.Supp.2d 417, 429 (D.N.J. 1999)] ("[S]tatement[s that] could

be made in relation to the auditor of every corporation" are not sufficient to raise the inference of scienter.).

*Fidel,* 392 F.3d at 232-33.  The same can be said here.

## 2.  *Nature and magnitude of Visteon's GAAP violations*

Plaintiffs argue that the nature and magnitude of Visteon's GAAP violations "are relevant to PwC's state of mind because PwC effectively enabled Visteon to use fundamentally flawed accounting practices in preparing its financial statements for 2001, 2002, 2003, and the first three quarters of 2004, by either knowingly or recklessly disregarding obvious and pervasive red flags indicating material deficiencies in Visteon's operations and internal controls."  Appellants' Br. at 60.

We have squarely addressed similar allegations of scienter based on the nature and magnitude of the accounting errors with respect to an outside auditor and explained that:

> [T]he class members contend that the magnitude of the financial fraud allegedly perpetuated by Fruit of the Loom bolsters the inference that [outside auditor] Ernst & Young acted with scienter.
> ***
> We decline to follow the cases that hold that the magnitude of financial fraud contributes to an inference of scienter on the part of the defendant.  Allowing an inference of scienter based on the magnitude of fraud "would eviscerate the principle that accounting errors alone cannot justify a finding of scienter."  *In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F.Supp.2d 334, 359 (W.D. Tenn. 2001); *see also In re Comshare Inc. Sec. Litig.*, 183 F.3d at 553 (holding that the failure to follow accounting standards "is, by itself, insufficient to state a securities fraud claim").  It would also allow the court to engage in speculation and hindsight, both of which are counter to the PSLRA's mandates.

*Fidel*, 392 F.3d at 231; *see also In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 637 n.34 (E.D. Va. 2000) (suggesting that the nature and magnitude of accounting errors may be relevant to the scienter analysis as it applies to corporate defendants, but not outside auditors).  Even if the magnitude of the accounting errors were relevant in general terms to scienter of an outside auditor, the magnitude here was not sufficient to raise a strong inference of scienter, as discussed *supra*.  We have emphasized that improper accounting alone does not establish scienter:

> Even if Ernst & Young had restated the figures used in its audit, this action would not have risen to the level of establishing scienter.  We have held that "a subsequent revelation of the falsehood of previous statements" does not imply scienter, because " '[m]ere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud.' "  *In re Comshare,* 183 F.3d at 553 (quoting *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)).  Therefore, it follows that even if Ernst & Young should have included the write-offs in its audit or that the audit report contained false statements because it did not include write-offs occurring during that year, Ernst & Young's actions do not create an inference that it acted with the requisite scienter.

*Id.*

Plaintiffs also allege that PwC disregarded "red flags," *see* Appellants' Br. at 60, but they fail to identify any specific "red flags" that raise a strong inference of scienter.  Plaintiffs cite their Amended Complaint; however, it details only GAAS violations that fail to create an inference of

scienter. *See PR Diamonds, Inc.*, 364 F.3d at 695 (distinguishing "[t]wo of the purported red flags [that] simply repeat the alleged GAAP improprieties" from the "genuine red flag"). The only other indicator that Plaintiffs point to as a "red flag" appears to be a statement by an anonymous witness. Plaintiffs allege that "[a]ccording to a former senior finance director at Visteon, PwC had raised concerns with Visteon management regarding the accounting for material surcharges and rebates, but 'signed off' on those accounting practices several times." Appellants' Br. at 60. Because this allegation lacks specificity and originates from an anonymous source, we are not inclined to accord it much weight in our analysis. *See Higginbotham*, 495 F.3d at 757. Moreover, Plaintiffs fail to allege particularized facts about the who, what, where, when, and how of what PwC knew or disregarded about Visteon's accounting practices, rendering the statement even less probative of scienter.

### 3. PwC's unqualified audits to Visteon's related party transactions with Ford in violation of GAAS

Plaintiffs allege that "the evidence of PwC's disregard for these related party transactions demonstrates that PwC either knew or recklessly disregarded Visteon's undisclosed status as a de facto subsidiary or SPE of Ford." Appellants' Br. at 62. These allegations are another attempt to couch alleged GAAS violations as evidence of scienter. Yet, Plaintiffs fail to plead any particularized facts to show that these purported violations "strongly suggest that [PwC] must have been aware of the corporation's fraud." *PR Diamonds*, 364 F.3d at 694.

### 4. PwC's intimate knowledge of Visteon's internal financial information

Plaintiffs also allege that PwC's "continual access to Visteon's confidential financial statements and business problems" further supports a strong inference of scienter. (Am. Compl. ¶ 12.) In the context of an outside auditor, we have explained that:

> According to the Complaint, Andersen's personnel were regularly present at Intrenet's corporate headquarters throughout the class period and had continual access to, and knowledge of, Intrenet's confidential financial and business information. These allegations, by themselves, are not enough to raise a strong inference of scienter because such allegations are insufficiently concrete to support such an inference. *See, e.g.,* [*Kennilworth Partners L.P.,* 59 F.Supp.2d at 429] ("[S]tatement[s that] could be made in relation to the auditor of every corporation" are insufficient to plead scienter, for "[i]f it were sufficient ..., it might make every auditor liable in cases of securities fraud."). However, while the mere fact that an auditor has access to a company does not necessary mean that it was aware of alleged fraud at the company, the greater the auditor's "access to and involvement with" the company's operations, the more support an inference of scienter takes on. *MicroStrategy*, 115 F.Supp.2d at 653.

*PR Diamonds, Inc.*, 364 F.3d at 695-96. We, therefore, take into account PwC's access to information but find it does not suggest a strong inference of scienter. *See id.* at 696. The Amended Complaint fails to allege what documents in particular PwC had access to or what information it would have learned from reviewing said documents. Indeed, Plaintiffs' allegations are insufficiently concrete to raise an inference of scienter, much less a strong one. *See id.* at 695-96; *see also Fidel*, 392 F.3d at 229-30.

Although we addressed each of Plaintiffs' allegations separately for purposes of this opinion, our ultimate conclusion is that Plaintiffs have failed to adequately plead scienter.[3] Plaintiffs have failed to meet their burden of pleading specific facts, which, when viewed cumulatively, persuade us that the most plausible conclusion is that Defendants must or should have known about Visteon's problems. "While the allegations no doubt merit drawing *some* inference of scienter, that is not enough. The PSLRA requires the [Amended] Complaint to establish a *strong* inference [of scienter]." *PR Diamonds Inc.*, 364 F.3d at 684 (emphasis in original). Plaintiffs failed to show that Defendants, whether it be Visteon, the Individual Defendants, or PwC, "acted at least recklessly, meaning that their states of mind were reflected in highly unreasonable conduct constituting an extreme departure from the standards of ordinary care so obvious that any reasonable person would have known of it." *Id.* Accordingly, the district court properly dismissed the Amended Complaint.

**Count III - § 20(a) claim**

The district court also dismissed Plaintiffs' § 20(a) Act claim against all Individual Defendants because it found no predicate violation of §§ 11, 10(b), or Rule 10b-5 by any of the Defendants. Because we agree with the district court that there is no predicate violation of the securities laws here, we likewise affirm the district court's dismissal of Plaintiffs' § 20(a) claim. *See id.* at 698 ("Because the Complaint fails to state an underlying securities law violation by a controlled person, we need not address the subsequent question of whether the Individual Defendants possessed an adequate degree of control to support a Section 20(a) claim.").

## CONCLUSION

For all the aforementioned reasons, we AFFIRM the judgment of the district court.[4]

---

[3] Moreover, despite Plaintiffs' suggestion to the contrary, we find that the district court also applied the appropriate totality of the circumstances test.

[4] Because of our holding today, we do not express an opinion about whether Plaintiffs properly have alleged loss causation or the propriety of Plaintiffs' relying on the group pleading doctrine in their Amended Complaint.