AMBRO, Circuit Judge, dissenting.
To state a claim under § 10(b) of the Securities Exchange Act, a plaintiff must “allege defendants made a misstatement or omission of material fact with scienter in connection with the purchase or the sale of a security upon which plaintiffs reasonably relied....” Institutional Investors Group v. Avaya, 564 F.3d 242, 251 (3d Cir.2009) (quotations and citations omitted). The District Court, with which my colleagues have expressed their agreement, held that plaintiffs, represented by the Police and Fire Retirement System of the City of Detroit (“PFRS”), failed to meet this requirement.
Though it determined that PFRS had alleged sufficient facts to show that senior officers of Horizon Lines, Inc. (“Horizon”) — Charles Raymond, M. Mark Urbania, John V. Keenan, Brian W. Taylor, and John W. Handy (collectively, the “senior executives”) — made false statements on which shareholders of Horizon relied, the Court ruled that PFRS failed to show they acted with the requisite scienter. While acknowledging that Gabriel Serra, R. Kevin Gill, and Gregory Glova (the “Puerto Rico managers”) had scienter,[1] it held that PFRS had not alleged sufficient facts to show they made false statements. Then, applying the rule of the Court of Appeals for the Fifth Circuit in Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353 (5th Cir.2004), the District Court concluded that, because no strong inference existed that a single Horizon employee made a false statement with scienter, PFRS could not survive a motion to dismiss as to Horizon itself. Because I believe that PFRS has alleged facts sufficient to support a strong inference that the senior executives made false statements with scienter, I think the District Court erred in dismissing PFRS’s amended complaint as to the senior executives and to Horizon.[2] Thus, I respectfully dissent.
Section 10(b) of the Securities and Exchange Act is given content by Rule 10b-5 of the Securities and Exchange Commission. The Rule makes it “unlawful for any person ... [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security.” 17 C.F.R. § 240.10b-5(b). To state a claim for relief under this section, plaintiffs must plead facts showing that “(1) the defendants] made a materially false or misleading statement or omitted to state a material fact necessary to make a statement not misleading; (2) the defendants] acted with scienter; and (3) the plaintiff[s]’ reliance on the defendants]’ misstatement caused [their] injury.” Cal. Pub. Employees’ Ret. Sys. v. Chubb Corp., 394 F.3d 126, *678 143 (3d Cir.2004); see also Avaya, Inc., 564 F.3d at 251.
The Private Securities Litigation Reform Act (the “PSLRA”) imposes heightened pleading requirements on plaintiffs bringing suit under the Securities and Exchange Act. See 15 U.S.C. § 78u-4(b). Specifically, with respect to the scienter requirement, a plaintiff must allege facts giving rise to a “strong inference” of “either reckless or conscious behavior.” In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534-35 (3d Cir.1999). We have held that the PSLRA “obliges courts to weigh the ‘plausible nonculpable explanations for the defendant’s conduct’ against the ‘inferences favoring the plaintiff.’ ... A ‘strong inference’ of scienter is one that is ‘cogent and at least as compelling as any opposing inference of nonfraudulent intent.’ ” Avaya, 564 F.3d at 267 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314, 323, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (“Tellabs ”)). However, as the Supreme Court has admonished, “[t]he inference that the defendant acted with scienter need not be irrefutable, ie., of the ‘smoking-gun’ genre, or even the most plausible of competing inferences.’ The inquiry ... is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.” Tellabs, 551 U.S. at 322-24, 127 S.Ct. 2499.
This is where I believe the District Court erred. In its 50-page opinion, the Court dedicated a scant one page to its collective analysis of scienter. As the Supreme Court has made clear, we must consider all allegations of scienter together. I agree with the Court of Appeals for the Sixth Circuit that “reviewing each allegation individually before reviewing them holistically risks losing the forest for the trees.” Frank v. Dana Corp., 646 F.3d 954, 961 (6th Cir.2011).
Moreover, I believe that PFRS has alleged sufficient facts to raise a strong inference that the senior executives acted with scienter. First, this was not a subtle conspiracy. It persisted for more than six years and involved a shipping market that accounted for more than a third of Horizon’s total revenue. Although shipping volumes in the Puerto Rico market had been declining steadily for more than a decade, and Horizon had three competitors for an ever-shrinking customer base, it managed to increase its shipping rates, and thus its revenues, every year during the class period. Moreover, the conspiracy spanned Horizon’s initial public offering of its stock, in preparation for which the senior executives assessed the company’s business and financial position. Against this “array of circumstantial evidence” it is hard to believe that five of Horizon’s most senior officers, including the Chief Executive Officer and the Chief Financial Officer, were not at least reckless in failing to discover the antitrust conspiracy. Avaya, 564 F.3d at 269.
Second, while we may not infer scienter solely from management’s position or “general awareness of the day-to-day workings of the company’s business,” we have held that a corporate officer had scienter as to risky behavior by other employees when he was asked about the behavior and denied its existence. Id. at 269-70; see also Makor v. Tellabs, 513 F.3d 702, 704 (7th Cir.2008) (“When the facts known to a person place him on notice of a risk, he cannot ignore the facts and plead ignorance of the risk.”). Similarly, in this case, the senior executives were pressed repeatedly by perplexed investors about how Horizon’s regular shipping rate increases in Puerto Rico were possible. In response, they credited a variety of reasons, including a stable competitive environment, responsible competition, market discipline, customer relationships, *679 and good business practices. PFRS Br. 42-43 (citing A-483-84, 494, 516, 519, 525, 531-33, 535). Combined with the nature, scope, and timing of the conspiracy, this is, I believe, sufficient to raise a strong inference that the senior executives were aware of the anomaly presented by Horizon’s ever-improving financial situation in a declining market, and were, at best, reckless as to the cause.
The evidence does not end there. Third, Urbanía, Horizon’s former Chief Financial Officer, announced his resignation, departed, and was replaced just two weeks prior to Horizon’s announcement that it was being investigated for antitrust violations. Putting aside the timing of his sudden leaving, Urbanía purportedly forfeited $4,000,000 in stock options and, contrary to standard company practice, did not receive a severance package. To say that this is not typical politely understates suspicious circumstances deserving, at least, further inquiry. Indeed, the Court of Appeals for the Ninth Circuit has held that scienter may be inferred when an executive’s resignation “was uncharacteristic when compared to the defendant’s typical hiring and termination patterns or was accompanied by suspicious circumstances.... ” Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1002 (9th Cir.2009).
One is tempted to say that these allegations, if true, compel further investigation if not a finding of scienter. Yet the District Court concluded that the temporal proximity of Urbania’s resignation to Horizon’s disclosure was irrelevant because the conspiracy and the investigation were covert prior to that announcement. The Court determined that, because it did not allege a more direct link, PFRS had “simply ... not connected Urbania’s resignation to the price-fixing conspiracy.” A-90. But, to repeat, a “strong inference” of scienter need only be “cogent and at least as compelling, as any opposing inference of nonfraudulent intent.” Tellabs, 551 U.S at 314, 127 S.Ct. 2499. The District Court did not explore possibly benign explanations for Urbania’s sudden resignation at great personal expense (and Horizon doesn’t offer any). Taken together, it appears to me that the nature, scope, and duration of the conspiracy, the questioning by investors, and Urbania’s resignation establish that it is more likely than not that one or more of the senior executives acted with the requisite scienter.
And there’s more! Fourth, PFRS notes that the Government represented in a sentencing memorandum that defendant Gill had “provided evidence, in the form of statements and documents, against Ms superiors within [Horizon], including presently uncharged co-conspirators.” A-446-47 (emphasis added). PFRS points out that it named as defendants all of Gill’s superiors (including Taylor, to whom he reported directly) who were involved with the Puerto Rican market. The District Court dismissed this allegation as “vague” and “speculative at best,” stating that PFRS had failed to plead particularized facts regarding scienter and the specific role of each defendant in the conspiracy. A-39.
Standing alone, I agree this would not be enough to raise a strong inference of scienter. But we are not to view PFRS’s allegations individually. Instead, we must ask “whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter-” Tellabs, 551 U.S. at 323, 127 S.Ct. 2499 (emphasis in original). With all else alleged, the Government’s statement that Gill provided evidence of the involvement of his superiors in the antitrust conspiracy crosses the divide from suspicious to my belief that it is more likely than not Horizon’s senior executives acted with scienter.[3]
*680 In sum, because PFRS’s allegations are sufficient to raise a strong inference of scienter as to the senior executives, I believe the District Court erred in dismissing PFRS’s amended complaint as to them.
Our sister Courts of Appeals have required different things of plaintiffs to survive a motion to dismiss on a § 10(b) claim against a corporation. In Southland, the Court of Appeals for the Fifth Circuit held that a plaintiff must plead that at least one individual acting on behalf of the corporation made a false statement with the requisite state of mind. 365 F.3d at 367. This was the approach adopted, without discussion, by the District Court. In contrast, the Court of Appeals for the Sixth Circuit adopted a collective scienter rule, holding that “knowledge of a corporate officer or agent acting within the scope of his authority is attributable to the corporation.” City of Monroe Employees Retirement Sys. v. Bridgestone Corp., 399 F.3d 651, 688 (6th Cir.2005) (internal quotations omitted). The Court of Appeals for the Seventh Circuit has applied the principle of respondeat superior in analyzing whether an individual defendant’s scienter could be attributed to the corporation, Pugh v. Tribune Co., 521 F.3d 686 (7th Cir.2008), and has suggested that “it is possible to draw a strong inference of corporate scien-ter without being able to name the individuals who concocted and disseminated the fraud,” Tellabs II, 513 F.3d at 710. Finally, the Court of Appeals for the Second Circuit has offered a helpful reconciliation of the cases:
When the defendant is a corporate entity, ... the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter. In most cases, the most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant. But it is possible to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual defendant.... Congress has imposed strict requirements on securities fraud pleading, but we do not believe they have imposed the rule urged by defendants, that in no case can corporate scienter be pleaded in the absence of successfully pleading scienter as to an expressly named officer.
Teamsters Local 445 Freight v. Dynex Capital, 531 F.3d 190, 195-96 (2d Cir.2008).
Because I believe that PFRS has alleged sufficient facts to show that the senior executives made false statements with scienter, and thus satisfied the strictest of the tests for corporate scienter (set forth in Southland), I believe that we need not reach the question of whether plaintiffs could survive a motion to dismiss as to Horizon with something less.
If all the above is not convincing enough that Horizon’s motion to dismiss should be *681 denied, we have late-breaking news: Horizon itself pled guilty to criminal antitrust violations. And guess who was excluded from the accompanying non-prosecution agreement? You guessed it — the senior executives (save Taylor).[4]
Horizon argues that its guilty plea has “no bearing” on whether PFRS has adequately pleaded corporate scienter because the standards are different — a corporation may be criminally liable under the doctrine of respondeat superior if any of its employees engage in antitrust activities, while under the securities laws a corporation may only be held liable if persons responsible for making false statements to the public also had scienter.
But this argument begs the question of what plaintiffs are required to plead to state a claim for corporate scienter. Even if we were to adopt such a rule, Horizon’s guilty plea, together with the exclusions in the non-prosecution agreement, weigh in favor of the scienter of the senior executives. As PFRS points out, “corporations are not charged criminally on the basis of actions of a ‘rogue employee.’ ” PFRS Supp. Br. 2 (quoting United States Attorney’s Manual 9-28.500(A)) (emphasis in original). Rather, “the most important consideration in determining whether to charge an entire corporation criminally is the ‘role and conduct of management.’ ” Id. (emphasis in original).
I believe it is more likely than not that the Government chose to pursue criminal liability for Horizon, more than two years after the Puerto Rico managers were imprisoned for their involvement, because it had information indicating that its senior management was involved in the conspiracy. Gilding the lily is not needed here, but there it is.
In conclusion, because I have no doubt that PFRS’s allegations are sufficient to raise a strong inference of scienter as to the senior executives, I conclude the District Court erred in dismissing PFRS’s amended complaint as to both the senior executives and Horizon. Indeed, it is hard to imagine a more compelling confluence of circumstantial evidence in support of this conclusion. In holding that the allegations in this case do not meet the requirements of § 10(b), I believe that the majority is demanding precisely what the Supreme Court told it not to require — a “smoking-gun.” See Tellabs, 551 U.S. at 324, 127 S.Ct. 2499. Thus I respectfully dissent.

. It was undisputed before us that the Puerto Rico managers had scienter, as they were convicted of criminal antitrust violations for their role in the conspiracy and sentenced to terms of imprisonment.

. PFRS’s allegations that the senior executives made false statements were essentially undisputed before us. The best Horizon can do is claim that although it did not address whether the senior executives made false statements, it "d[id] not concede” the point. Horizon Br. 17. As I agree with my colleagues and the District Court that PFRS has more than adequately satisfied this requirement, and Horizon presents no arguments to the contrary, I do not address this further.

. PFRS also notes that motive, particularly financial gain, and opportunity "may weigh *680 heavily in favor of a scienter inference.” Id. at 325, 127 S.Ct. 2499. PFRS alleges that the senior executives acquired substantial stock and stock options in Horizon, some of which they sold for millions of dollars in proceeds during the class period, and thus had the motive to engage in the conspiracy to inflate the price of Horizon’s stock. Stock transactions may create an inference of scienter when they are " ‘unusual in scope or timing.’ ” Avaya, 564 F.3d at 279 (quoting Ad-vanta, 180 F.3d at 540). The stock sales at issue at first blush do not appear to meet that test, as most of them were made pursuant to § 10b5-l plans, under which corporate executives sell predetermined amounts of stock on predetermined dates to avoid liability for insider trading. However, the existence of the § 10b5-l plans is also not exculpatory because the plans were put into place in 2006, after the conspiracy began.

. PFRS does not "advocate[e] a rule that a corporate guilty plea, by itself, automatically leads to a successful securities fraud complaint.” PFRS Supp. Br. 4. As PFRS acknowledges, "[ejven where a corporation pleads guilty to criminal activities, the plaintiff must also establish that the corporation issued false statements inconsistent with the facts admitted in the plea, that the false statements were material, the truth was not known to the public, and that revelation of the truth caused the plaintiffs’ losses.” Id. (citing Dura Phann., Inc. v. Broudo, 544 U.S. 336, 339, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)).