<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

File Name: 19a0225n.06

Case No. 18-5524

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Apr 29, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SPECIALTY AUTO PARTS USA, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| HOLLEY PERFORMANCE PRODUCTS, | ) | KENTUCKY |
| INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: CLAY and STRANCH, Circuit Judges; PEARSON, District Judge.[*]

CLAY, Circuit Judge. Plaintiff Specialty Auto Parts USA, Inc. ("Specialty") appeals from the district court's order dismissing Specialty's claims against Defendant Holley Performance Products, Inc. ("Holley") with prejudice. Specialty argues that the district court erred in concluding that Specialty's claims against Holley were barred by claim and issue preclusion. For the reasons set forth below, we **REVERSE** the decision of the district court and **REMAND** for further proceedings consistent with this opinion.

---

[*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

## BACKGROUND

Specialty and Holley are competing manufacturers of high-end carburetors. The two companies have engaged in a string of lawsuits against each other, several of which are relevant to this case.

### I. Protective Order and Contempt Action

In 2007, Holley filed a complaint against another competitor, Quick Fuel Technology, Inc. ("Quick Fuel"). In that action (the "Quick Fuel case"), Holley served a third-party subpoena on Specialty pursuant to Fed. R. Civ. P. 45 on January 6, 2011. The subpoena required Specialty to produce documents related to its communications and business dealings with both Holley and Quick Fuel. Specialty objected, and Holley sent Specialty a letter containing the Protective Order entered in the Quick Fuel case. The letter stated, "Holley will agree that the terms of this protective order will apply to any documents produced by [Specialty]." (R. 1-1, Letter, PageID # 38.) The Protective Order provided different levels of protection for parties and non-parties. It allowed parties to designate documents as "Confidential Information" or "Attorneys' Eyes Only," but it only allowed non-parties to make a "Confidential" designation on the record during a deposition. The Protective Order also provided that "[a]ll Confidential Information produced or exchanged in the course of this civil action shall be used solely for the purpose of preparation and trial of this action and related causes, but for no other purpose whatsoever, and shall not be disclosed to any person except in accordance with the terms hereof except where required by court order." (R. 1-1, Protective Order, PageID # 62.)

After receiving Holley's letter, Specialty produced the required documents, designating some as "Confidential" and some as "Attorneys' Eyes Only." Specialty expressed its understanding that the "Attorneys' Eyes Only" documents would "not be shared or provided to

Holley even in digest or summary form," and Specialty requested that Holley return the documents unread if Holley disagreed with that understanding. (R. 1-2, Letter, PageID # 232.) Holley did not return the documents.

Soon after Holley received the documents, it filed a complaint against Specialty in the Northern District of Illinois (the "Illinois case") and amended its complaint in the Quick Fuel case to add claims against Specialty. Holley's claims against Specialty appeared to rely on documents obtained from Specialty in the Quick Fuel case that had been designated "Confidential" and "Attorneys' Eyes Only."

In 2012, Specialty filed a motion in a miscellaneous action in the Western District of Kentucky for an order requiring Holley to show cause why contempt should not be entered (the "Contempt Action").[1] Specialty alleged that Holley had violated the Protective Order by improperly using the documents that Specialty provided in the Quick Fuel case. Specialty sought costs and attorneys' fees incurred in defending against Holley's actions in the Quick Fuel and Illinois cases, as well as in the Contempt Action.

On November 2, 2012, the magistrate judge issued a Report & Recommendation in the Contempt Action (the "Contempt R&R"). The Contempt R&R stated:

> It is undisputed that, prior to Specialty's production, Holley and Specialty agreed that the evidence would be subject to the protections afforded [Attorneys' Eyes Only] evidence by the Protective Order. This Report recommends that, notwithstanding this private understanding, the Stipulated Protective Order did not itself clearly and unambiguously provide standing to a non-party, Specialty, for protection of [Attorneys' Eyes Only] evidence. Therefore, there was no contempt of court, and the pending motion should be denied.

---

[1] On November 2, 2018, Holley filed a motion for this Court to take judicial notice of, and supplement the record with, certain relevant court documents relating to the Quick Fuel case and the Contempt Action. We hereby grant this motion.

(R. 1-3, Contempt R&R, PageID # 277–78.) In other words, because "[t]here was no motion to modify the Protective Order to incorporate the letter agreement of [Specialty and Holley's] counsel," and because "Specialty was a non-party at the time the Stipulated Protective Order was entered into by Holley and Quick Fuel," Specialty could not enforce the Protective Order. (*Id.* at PageID # 290–92.) The district court adopted the Contempt R&R and denied Specialty's motion for contempt.

## II.  Settlement Agreement in Trade Dress Litigation

Beginning in 2000, Holley and Specialty engaged in litigation (also in the Western District of Kentucky) over alleged trade dress misappropriation (the "Trade Dress case"). In 2001, Holley and Specialty entered into a Settlement Agreement in the Trade Dress case. As part of the Settlement Agreement, Holley agreed to "manufacture all of its HP line of main bodies with 6 identification surfaces cast into the main body." (R. 1-1, Settlement Agreement, PageID # 84–85.) Holley agreed that, as long as Specialty conforms to the Settlement Agreement, "Holley will not accuse the parts nor the users or manufacture[r]s thereof of infringing Holley's trademarks or such trade dress." (*Id.* at PageID # 84.) Both parties agreed to "release[] the other from all liability for the claims asserted in this suit and any other claim which either party might have against the other with respect to the subject matter of this suit." (*Id.* at PageID # 83.) Finally, the Settlement Agreement provided that the Western District of Kentucky "shall retain jurisdiction to enforce the terms of this Agreement." (*Id.*) The final stipulation of dismissal, however, did not mention retained jurisdiction.

In 2012, Specialty reopened the Trade Dress case by filing a motion for summary enforcement of the Settlement Agreement (the "Settlement Agreement Action"). Specialty alleged that Holley had violated the Settlement Agreement both by introducing a product that did not

comply with the requirements of the Settlement Agreement and by bringing prohibited trade dress-related claims against Specialty. Specialty requested equitable relief and money damages. Holley denied the allegations.

On May 13, 2014, the district court issued an order finding that Holley had violated several provisions of the Settlement Agreement. On the issue of relief, the district court referred the matter to the magistrate judge "to develop the record and issue a report and recommendation as to the appropriate relief to award." (R. 1-1, Memorandum and Order, PageID # 105.) The parties submitted briefs to the magistrate judge, with Specialty arguing that "[u]nder long-established principles of contract law applicable to Holley's intentional breach of the Settlement Agreement, Specialty is entitled to all equitable relief . . . and damages." (R. 5-23, Motion for Relief, PageID # 1120.)

The magistrate judge issued a Report and Recommendation (the "Settlement Agreement R&R") on October 20, 2014. The Settlement Agreement R&R determined that "only specific enforcement of the terms of the [Settlement Agreement] is appropriate." (R. 1-4, Settlement Agreement R&R, PageID # 513.) The magistrate judge stated that "[w]here, as in this case, a court has not incorporated the terms of the settlement agreement into its order dismissing the case, its enforcement power is restricted to the terms of the agreement." (*Id.* at PageID # 522.) Therefore, the magistrate judge reasoned that, "[a]ccording to the terms of the settlement agreement, as interpreted under contract law, specific enforcement would preclude Holley from manufacturing, distributing, or selling any breaching products" and "would enjoin Holley from bringing any future breaching claims but would include no other remedies." (*Id.* at PageID # 526.) The Settlement Agreement R&R also noted that "[i]ndependent breach of settlement claims also exist. Where federal jurisdiction is not maintained or otherwise available, parties may bring a separate state

cause of action for breach of contract to enforce a settlement agreement." (*Id.* at PageID # 517.) The district court adopted the Settlement Agreement R&R.[2]

## Procedural History

On May 8, 2017, Specialty filed a complaint against Holley in Michigan state court. The complaint alleged three claims for breach of contract. In Count I, Specialty alleged that Holley had breached Specialty and Holley's agreement that the terms of the Protective Order in the Quick Fuel case would apply to any documents produced by Specialty in that case. In Counts II and III, Specialty alleged that Holley had breached the terms of the Settlement Agreement in the Trade Dress case by manufacturing components without the identification required by the Settlement Agreement and by asserting prohibited claims against Specialty. Holley removed the case to the District Court for the Eastern District of Michigan, which then granted Holley's motion to transfer the case to the Western District of Kentucky.[3]

Holley then moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Holley argued that the doctrine of claim preclusion barred Specialty's claims. On January 29, 2018, the magistrate judge issued a Report and Recommendation (the "2018 R&R"), which recommended dismissing Specialty's claims with prejudice.[4] The magistrate judge reasoned that all of Specialty's claims were barred by claim preclusion and that Counts II and III were also barred by issue preclusion.

As to Count I, the magistrate judge noted that "[t]he parties fail to cite and the Court has located no authority that is directly on point for the proposition that claim preclusion does or does

---

[2] In its brief, Holley describes yet another action between Specialty and Holley that occurred in 2016, which Holley refers to as "*Specialty III*." (Holley Br. at 12–15.) However, that action is not at issue in this case.

[3] As part of its opposition to the transfer, Specialty argued that offensive issue preclusion applied to prevent Holley from denying that it had violated the Settlement Agreement.

[4] The same magistrate judge and district court judge decided this action, the Contempt Action, and the Settlement Agreement Action.

not bar a breach of contract action following a prior, unsuccessful contempt of court action." (R. 40, 2018 R&R, PageID # 2417.) Nonetheless, the 2018 R&R concluded that claim preclusion applies to Count I. Although the district court dismissed the Contempt Action because Specialty did not have "standing" to rely on the Protective Order between Holley and Quick Fuel, the 2018 R&R stated as follows:

> The [Contempt R&R] used the term "standing" in its non-technical sense (*see* Merriam-Webster dictionary definition number 4, "established by law or custom"), rather than its technical sense contemplated by the "standing to sue doctrine" (*see* Black's law dictionary, "standing to sue means that party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy"). There is no established law or custom that a party (Specialty) may obtain a judgment of contempt against another party (Holley) where the court order ([the Protective Order]) did not mention or otherwise contemplate the first party (Specialty). Specialty, however, had sufficient stake in its contempt claims to obtain a judicial resolution on the merits—it did not prevail. Thus, there was a final judgment on the merits in the prior action.

(*Id.* at PageID # 2419.) Additionally, the 2018 R&R determined that "[b]ecause the Court [in the Contempt Action] had jurisdiction to consider the breaches of contract alleged in Count I of the present complaint, Specialty should have raised them in the prior contempt action." (*Id.* at PageID # 2421.) The 2018 R&R stated, "[a] party may not circumvent the rule against claim splitting by first trying its case as a contempt action and then, disappointed with the outcome, try it as a breach of contract action." (*Id.* at PageID #2420.)

The 2018 R&R also found that both issue preclusion and claim preclusion bar Counts II and III. The magistrate judge reasoned that claim preclusion applies because "nothing prevented Specialty from filing the present breach of contract action contemporaneously with its Motion for Summary Enforcement of Certain Settlement Provisions." (*Id.* at PageID # 2421.) Similarly, the magistrate concluded that "issue preclusion applies because any allegations of breaches and/or

assertions of any remedies are precisely the same as those previously claimed." (*Id.* at PageID # 2422.)

The district court adopted the 2018 R&R and granted Holley's Motion to Dismiss. This appeal followed.

## DISCUSSION

### Standard of Review

This Court reviews a district court's dismissal of a claim under Fed. R. Civ. P. 12(b)(6) *de novo*. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004), *abrogated in part on other grounds*, *Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011). In doing so, the Court "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The central question is whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## I.      Count I

### Analysis

Claim preclusion is a doctrine that prevents "litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984).

> To establish claim preclusion, the defendants need to show (1) 'a final judgment on
> the merits' in a prior action; (2) 'a subsequent suit between the same parties or their

privies'; (3) an issue in the second lawsuit that should have been raised in the first; and (4) that the claims in both lawsuits arise from the same transaction.

*Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).

In Count I, Specialty alleged that Holley had breached Specialty and Holley's agreement reached via letter exchange that the terms of the Protective Order in the Quick Fuel case would apply to any documents produced by Specialty in that case. The district court determined that claim preclusion barred Count I, because Specialty should have raised that state law breach of contract claim in the Contempt Action in 2012. Specialty does not dispute that elements 2 and 4 of claim preclusion are satisfied as to Count I. Instead, Specialty argues that claim preclusion does not apply to Count I because there was no final judgment on the merits in the Contempt Action and because Specialty could not have raised its Count I allegations in the Contempt Action.

Specialty first contends that there was no final judgment on the merits in the Contempt Action. The Contempt R&R, which the district court adopted, held that "Specialty does not have standing to rely upon the Protective Order to make a claim of civil contempt, and it has failed to make out a *prima facie* case of contempt." (R. 1-3, Contempt R&R, PageID # 294.) In this case, however, the same magistrate judge and district court interpreted the Contempt R&R's language to refer to something other than the traditional legal meaning of standing. The report that was ultimately adopted by the district court found that the Contempt R&R had "used the term 'standing' in its non-technical sense," to mean that "[t]here is no established law or custom that a party (Specialty) may obtain a judgment of contempt against another party (Holley) where the court order ([the Protective Agreement]) did not mention or otherwise contemplate the first party (Specialty)." (R. 40, 2018 R&R, PageID # 2419.)

We disagree with the district court's interpretation. The Contempt R&R, which the district court adopted, used the term "standing" multiple times in explaining why Specialty could not obtain relief in that action. The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Because Specialty was not a party to the Protective Order, the district court in the Contempt Action recognized that Specialty was not in the category of litigants empowered to maintain a lawsuit in federal court to seek redress for violation of the Protective Order. A dismissal based on standing is not a decision on the merits. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). Therefore, "a dismissal for lack of standing is not an adjudication on the merits for purposes of res judicata." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 521 (6th Cir. 2011) (finding that *res judicata* did not bar litigation of claims that had previously been dismissed for lack of standing). If the district court meant to decide the Contempt Action based on something other than the accepted legal meaning of standing, it could have said so or used a different term. We find that the district court did not enter a final judgment on the merits in the Contempt Action, so the first element of claim preclusion is not satisfied in this case. Claim preclusion does not prevent Specialty from asserting Count I, and we need not address whether Specialty should have raised the state law breach of contract claim in the Contempt Action. Because Holley does not dispute the district court's conclusion that issue preclusion does not bar Count I, we reverse the district court's dismissal thereof.

## II.     Counts II and III

### Analysis

#### A. Claim Preclusion

Counts II and III assert breach of contract claims arising from Holley's alleged violation of the Settlement Agreement in the Trade Dress case. The district court concluded that Counts II and III are barred by claim preclusion, because they could have been litigated in the 2012 Settlement Agreement Action. As with Count I, Specialty argues that the district court erred in finding Counts II and III barred by claim preclusion because there was not a final judgment on the merits in the Settlement Agreement Action and because Specialty could not have brought its breach of contract claims in that earlier case. We find that the district court erred in finding Counts II and III barred by claim preclusion.

#### 1.   Final Judgment on the Merits

First, Specialty argues that the district court did not issue a final judgment on the merits in the Settlement Agreement Action. In the Settlement Agreement Action, Specialty argued that Holley had breached the Settlement Agreement, and that Holley's breach entitled Specialty to both equitable relief and damages. Specialty argued before the district court in the Settlement Agreement Action that the Settlement Agreement, interpreted according to contract principles, authorized the district court to grant relief to Specialty such as ordering Holley to reimburse its customers for any products sold in violation of the Settlement Agreement and requiring Holley to forfeit all such revenues to Specialty. The district court in the Settlement Agreement Action found that Holley had violated the Settlement Agreement but concluded that the only relief contemplated by the Settlement Agreement was specific performance. Contract law, the district court reasoned, governed the interpretation of the Settlement Agreement but not the remedies available under it.

The Settlement Agreement R&R stated:

> The report agrees with Specialty's contention that the court has inherent power to enforce the settlement agreement outside contract law. Under this inherent power, contract principles govern the *interpretation* of the settlement agreement. However, this report finds that contract principles do not govern the remedies available. As applied below, this inherent power dictates specific enforcement of the terms of the settlement agreement, those terms being interpreted under Kentucky contract law.

(R. 1-4, Settlement Agreement R&R, PageID # 515.) Therefore, in adopting the R&R, the district court reached the merits of Specialty's claim in the Settlement Agreement Action: it determined that Holley had violated the Settlement Agreement and that under the Settlement Agreement, Specialty was entitled to relief. The district court simply found that in that action to enforce the Settlement Agreement, Specialty was not entitled to all the relief that it sought. *See J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 213–14 (6th Cir. 1996) (claim preclusion barred subsequent suit for certain damages that the plaintiff had not requested in a prior suit arising from the same set of facts). The test for claim preclusion does not ask whether the previous action resulted in a final judgment on the merits of the precise issue asserted; rather, it asks whether the previous action as a whole resulted in a final judgment on the merits. *See Wheeler*, 807 F.3d at 766. Here, it did.[5]

## 2. Whether Specialty Could Have Brought Counts II and III in the Settlement Agreement Action

Specialty next argues that claim preclusion does not apply because Specialty could not have brought Counts II and III as part of the Settlement Agreement Action. If Specialty could have brought Counts II and III in the Settlement Agreement Action, then the third requirement of claim preclusion is satisfied and Counts II and III are precluded. *See Rawe v. Liberty Mut. Fire Ins. Co.*,

---

[5] Specialty itself argued before the district court in opposition to Holley's motion to transfer that the Settlement Agreement Action had produced a final judgment on the merits.

462 F.3d 521, 528–29 (6th Cir. 2006). If Specialty could not have brought Counts II and III in the Settlement Agreement Action, then the third requirement is not satisfied and claim preclusion does not apply. *See id.*

Claim preclusion does not apply when a plaintiff was "unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts . . . , and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief." Restatement (Second) of Judgments, § 26(1)(c) (Am. Law Inst. 1982). Specialty argues that Counts II and III, state law breach of contract claims for violation of the Settlement Agreement, fall under this exception to claim preclusion. Holley argues that Counts II and III are subject to claim preclusion, because no "formal barriers" prevented the district court in the Settlement Agreement action from exercising supplemental jurisdiction over Counts II and III. *See id.* § 26(1)(c), cmt. c.

Specialty initiated the Settlement Agreement Action by reopening the Trade Dress case and filing a motion for summary enforcement of the Settlement Agreement. Whether Specialty could have brought Counts II and III in the Settlement Agreement Action is a close question. Specialty has not identified any formal jurisdictional barriers prohibiting the district court in the Settlement Agreement Action from exercising supplemental jurisdiction over Counts II and III. But it is difficult to imagine, and Holley has not suggested, any procedure by which Specialty might have raised new state law breach of contract claims in the Settlement Agreement Action, which was a reopening of the Trade Dress case. The parties settled the Trade Dress case in 2001; that case had long been closed by the time Specialty reopened it to obtain summary enforcement of the Settlement Agreement in 2012. It would have required a strange kind of time travel for Specialty in 2012 to have secured leave to amend its 2000 complaint in the Trade Dress case to

assert state law breach of contract claims for violation of the Settlement Agreement that resolved that very case.

In *Marlene Industries Corp. v. N.L.R.B.*, 712 F.2d 1011 (6th Cir. 1983), this Court stated: "[w]e are mindful of the admonishment that 'neither collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy or result in manifest injustice.'" *Id.* at 1017 (quoting *Bronson v. Bd. of Educ.*, 525 F.2d 344, 349 (6th Cir. 1971)). "[A]ccept[ing] all well-pleaded factual allegations of the complaint as true and constru[ing] the complaint in the light most favorable to the plaintiff," as we must do at this stage, Specialty has alleged that Holley flagrantly violated the Settlement Agreement entered into by the two parties in 2001. *Inge*, 281 F.3d at 619. In addition to our conclusion that Specialty's claims likely could not have been brought in the Settlement Agreement Action, an overly strict application of the doctrine of claim preclusion would not serve the interests of justice in this case. We hold that the district court erred in dismissing Counts II and III on the basis that they were barred by claim preclusion.

## B. Issue Preclusion

Finally, we must determine whether the district court erred in finding that Counts II and III are also barred by issue preclusion. Issue preclusion applies if four elements are met:

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Ark. Coals, Inc. v. Lawson*, 739 F.3d 309, 320–21 (6th Cir. 2014).

We have already determined that Specialty *could not* have raised its state law breach of contract claims for Holley's alleged violation of the Settlement Agreement in the Settlement

Agreement Action. It necessarily follows that Specialty *did not* raise the precise issue of its entitlement to remedies for violation of the Settlement Agreement in the context of a state law breach of contract claim in the Settlement Agreement Action. Therefore, the first element of issue preclusion is not met, because "the precise issue [was not] raised and actually litigated in the prior proceedings." We hold that the doctrine of issue preclusion does not apply to Counts II and III, and the district court erred in dismissing Counts II and III on that basis.

### CONCLUSION

The district court erred in dismissing Count I on the basis of claim preclusion and in dismissing Counts II and III on the bases of claim preclusion and issue preclusion. We therefore **REVERSE** and **REMAND** the decision of the district court for further proceedings consistent with this opinion.